**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0662-23

MICHAEL P. RYAN
and NADINE RYAN,

      Plaintiffs-Respondents,

v.

HAMMONTON TOWN BOARD OF
EDUCATION,

      Defendant-Appellant,

and

TOWNSHIP OF EASTAMPTON,
EASTAMPTON POLICE
DEPARTMENT, CHIEF JOSEPH
IACOVETTI, and MICHAEL
MUSSER, jointly, severally, and
individually,

      Defendants.

_____

Submitted May 8, 2025 – Decided July 10, 2025

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2208-19.

Cooper Levenson, PA, attorneys for appellant (Rebecca D. Winkelstein and William S. Donio, on the briefs).

Jacobs & Barbone, PA, attorneys for respondents (Louis M. Barbone, on the brief).

PER CURIAM

On October 16, 2023, the trial court entered judgment in favor of plaintiffs Michael P. Ryan and Nadine Ryan,[1] awarding them $364,472.20 in back pay under N.J.S.A. 18A:6-30. Defendant Hammonton Town Board of Education appeals from various orders, including the January 19, 2021 order that granted partial summary judgment to plaintiffs and determined plaintiff was entitled to back pay. Defendant also appeals from several orders barring it from arguing mitigation and other related defenses.[2] After careful consideration of the record and the governing legal principles, we affirm in part, vacate in part, and remand for further proceedings.

---

[1] For clarity, throughout this opinion we refer to Michael Ryan as "plaintiff," and respondents collectively as "plaintiffs."

[2] Specifically, defendant appeals from the: March 29, 2023 order in which the court found defendant was barred from arguing mitigation of damages with respect to plaintiff's retirement and pension benefits; May 30, 2023 order in which the court held plaintiff's early retirement application did not terminate his entitlement to back pay; July 21, 2023 order denying reconsideration of the May 30 order; August 25, 2023 order granting in part and denying in part defendant's second motion for reconsideration; and the civil action order of disposition dated September 18, 2023.

2

A-0662-23

I.

The dispute between the parties began when Eastampton Township Patrol Officer Michael Musser swore a municipal complaint alleging plaintiff, a tenured guidance counselor employed by defendant, committed an act of lewdness on September 11, 2015, in violation of N.J.S.A. 2C:14-4(a).[3] Because lewdness is a disqualifying offense for public school employment, see N.J.S.A. 18A:6-7.1, the same month plaintiff was charged, defendant suspended him with pay pending adjudication of the charges.

The municipal court ultimately convicted plaintiff on the lewdness charge, and he filed a timely de novo appeal of his conviction with the Law Division. As a consequence of plaintiff's conviction, defendant converted his suspension to be without pay. Shortly thereafter, the Criminal History Review Unit (CHRU) of the Department of Education informed plaintiff he was "permanently disqualified" from employment with any public school in the state. In accordance with the CHRU's determination, defendant terminated plaintiff's employment on January 19, 2017.

---

[3] The State issued two additional complaint-summonses charging plaintiff with an additional act of lewdness on September 20, 2015, N.J.S.A. 2C:14-4(a), and one count of disorderly persons obstructing the administration of law, N.J.S.A. 2C:29-1(a). The municipal court dismissed the charges associated with those complaint-summonses, and they are accordingly not relevant to this appeal.

A-0662-23

On de novo review, the Law Division found plaintiff guilty and entered a judgment of conviction against him. Before judgment was entered, and out of what he contended was "financial necessity," plaintiff filed an application for retirement, effective June 1, 2017. He later appealed his conviction, and by order dated December 5, 2017, we remanded the matter for a new trial.[4] The Law Division vacated the judgment of conviction and remanded to the municipal court. By letter, the prosecutor's office informed the municipal court it "declined to continue the prosecution," and the lewdness charge had been dismissed.

After corresponding with the CHRU, plaintiff requalified for public school employment and defendant rehired him to the same position he had previously occupied. While plaintiff and defendant were able to agree on his reinstatement, the parties were unable to reach an agreement concerning plaintiff's entitlement to back pay.

---

[4] We remanded based on newly discovered evidence. Specifically, after plaintiff's conviction, he became aware Musser had been the subject of an Internal Affairs investigation and subsequently terminated by the Eastampton Township Police Department for misusing departmental sick time and for being untruthful during the investigation.

A-0662-23

Plaintiffs then filed a complaint for declaratory judgment against defendant seeking back pay under N.J.S.A. 18A:6-30.[5] Specifically, plaintiffs sought: (1) entry of "[a]n [o]rder confirming plaintiff's exoneration on all criminal charges and declaring that [his] dismissal by [defendant] was 'illegal' pursuant to N.J.S.A. 18A:6-30"; (2) "[a]n [o]rder declaring that [defendant] is mandated to supply the [p]ension [b]oard with particular accounting and enumeration of salary, benefits[,] and emoluments of office . . . so that plaintiff can be reenrolled into the pension system"; and (3) an order compelling defendant to compensate plaintiffs "for the entire period covered by [the] illegal dismissal."

Plaintiffs later moved for partial summary judgment "on the issue of [plaintiff's] entitlement to back pay pursuant to [N.J.S.A.] 18A:6-30." In its response to plaintiffs' statement of material facts, defendant admitted to most of plaintiffs' allegations, with the following relevant exception: defendant disputed plaintiff's characterization that his retirement application was submitted out of "financial necessity."

---

[5] Plaintiffs also sought relief against the Township of Eastampton, Eastampton Police Department, Chief Joseph Iacovetti, and Musser. Except for Musser, the claims against the other defendants were dismissed with prejudice on summary judgment, and Musser later settled with plaintiffs.

After considering the parties' submissions and oral arguments, the court granted plaintiffs' application and issued a conforming order on January 19, 2021. In its oral decision, the court concluded "[w]ith respect to the . . . issue of back pay[,] I'm going to grant that motion. I think that . . . plaintiff[s are] entitled to back pay." The court, however, made clear its ruling did not address how plaintiff's retirement affected his right to back pay or whether it could be used to mitigate his damages: "[p]laintiff is entitled, in my judgment, to back pay for the time periods involved. Defendant is entitled to attempt to offset that back pay award by whatever argument that . . . defendant wants to make that . . . defendant believes will offset the total amount of the payment."

Notably, before rendering its decision, the court observed:

> I don't think anybody, and I've read [plaintiffs'] brief, is suggesting that there was bad faith on the part of [defendant], or [that defendant] did anything other than what it was required to do at the time that the [m]unicipal [c]ourt convicted [plaintiff]. But I think [plaintiffs'] argument is that even though [defendant] acted consistent with what it was told by the State[,] that given the ultimate dismissal of the charges that under the statute [plaintiffs are] entitled to back pay.

A-0662-23

Plaintiffs later filed a motion in limine seeking an order barring defendant from arguing at trial that plaintiff's retirement benefits mitigated his damages.[6] By order and written opinion dated March 29, 2023, the court granted plaintiffs' application and ordered that "[d]efendant [was] barred from arguing mitigation of damages with regard to unemployment benefits and retirement/pension benefits."

In its written decision, the court relied upon Model Jury Charges (Civil), 2.33(A)(8), "Mitigation of Economic Damages – Back Pay" (rev. Apr. 2014), which provides:

> Although the back pay award should be reduced by any actual earnings, it should not be reduced by any unemployment benefits or other unearned income the plaintiff may have received. This means that the plaintiff had an obligation to use reasonable and diligent efforts to seek other comparable employment, and to accept it, if it were offered.

The court further noted the charge cited Sporn v. Celebrity, Inc., 129 N.J. Super. 449, 453-60 (Law Div. 1974), and Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 83 (3d Cir. 1983). It interpreted these cases to mean that "a negligent party responsible for another person's damages should not be able to avoid financial

___

[6] Plaintiffs' motion also sought the court's recusal, which was granted, and the matter was assigned to a different judge.

A-0662-23

responsibility for damages because the plaintiff had a source which already paid the plaintiff some benefits."  Additionally, the court took note of the collateral source rule and explained two rationales for the rule "are that plaintiff may have paid for the benefits and a preference that windfalls go to victims rather than wrongdoers."

Based on those authorities, the court found "[p]laintiff's receipt of retirement benefits [was] irrelevant to the [factfinder's] determination of damages."  It explained defendant provided no authority for the proposition that plaintiff's back pay could be reduced by the amount of retirement benefits he received.  It further noted "the parties both acknowledge[d] that once [p]laintiff receives his back pay, he will be legally obligated to reimburse the Division of Pensions . . . .  As such, there would be no windfall to [p]laintiff."

Before the court rendered its decision on plaintiffs' first motion in limine, plaintiffs filed a second motion seeking an order as to "whether plaintiff's application for retirement terminate[d] his entitlement to back pay . . . as a matter of law."  By order entered on May 30, 2023, the court granted plaintiff's application and concluded plaintiff's "retirement [did] not terminate his entitlement to back pay."

Defendant moved for reconsideration of the court's May 30 order. The court held oral argument on defendant's motion, denied reconsideration on both procedural and substantive grounds, explained its decision in both an oral and written opinion, and issued a conforming order on July 21, 2023.

At oral argument, the court began its decision by detailing the extensive motion practice in the matter and concluded its May 30 order resolved all issues in the case. Therefore, it found defendant's motion for reconsideration under Rule 4:42-2 was untimely.

Addressing the substance of defendant's motion, the court noted the parties disputed whether plaintiff's retirement cut short the period for which he was entitled to back pay. That is, "[p]laintiff[s sought] payment from [d]efendant for two[-]and[-]a[-]half . . . years, from December 15, 2016, . . . to June 6, 2019," while "[d]efendant sought to pay [plaintiffs] for six . . . months[,] from December 15, 2016 . . . to June 1, 2017." The court found "no logical basis to exclude [p]laintiff's back pay during the time of his retirement," in part, because plaintiff was required to reimburse the Division of Pensions for all money expended on his behalf during his suspension and dismissal.

On August 25, 2023, the court revisited defendant's motion for reconsideration, granted it in part, denied it in part, explained its reasoning in a

written decision, and issued a conforming order that same day. The court explained it "erroneously concluded that once the timeline of the back[ ]pay was determined via court order filed on May 30, 2023, that there were no further issues to be resolved." It found the May 30 order was not a final order and reversed that portion of its July 21 order that found defendant's motion for reconsideration was untimely. The court, however, concluded the substantive portion of its decision remained in full effect.

At a pretrial conference, the parties informed the court they had agreed on the amount of compensation due to plaintiffs of $364,472.20. The court accordingly entered a final judgment reflecting that amount on October 16, 2023.

## II.

On appeal, defendant contends the court erred in "granting plaintiff[s] partial summary judgment on the issue of [plaintiff's] entitlement to compensation under N.J.S.A. 18A:6-30." Relying on the "plain language" of the disqualification statutes for public school employees convicted of certain offenses, N.J.S.A. 18A:6-7.1 to -7.5, defendant argues plaintiff's "paid suspension pending [the] outcome of the charges, and the termination of his pay and employment upon his conviction, were legal."

A-0662-23

Anticipating plaintiffs would contend "that N.J.S.A. 18A:6-7.1 must be construed in pari materia with N.J.S.A. 18A:6-8.3 to make illegal for purposes of N.J.S.A. 18A:6-30 both the suspension of [plaintiff's] pay after his conviction and [his] automatic disqualification and termination before disposition of the appeal of his conviction," defendant argues such a construction is flawed because the statutes "were enacted for entirely different purposes." It maintains the statutes are not in pari materia because the purpose of N.J.S.A. 18A:6-8.3 "was to protect the salary of a suspended school employee after a period of 120 days following the certification of charges and pending their resolution." Additionally, defendant notes N.J.S.A. 18A:6-7.1 "was not made part of [the State's] laws until fifteen years" after the enactment of N.J.S.A. 18A:6-8.3.

Even if the statutes are in pari materia, defendant argues plaintiff's unpaid suspension and subsequent termination still would not be "illegal" under N.J.S.A. 18A:6-30. It contends in enacting N.J.S.A. 18A:6-7.1, the "[L]egislature intentionally did not define a conviction as 'the final disposition of a criminal complaint after appeal' or use any language similar to that in N.J.S.A. 18A:6-8.3, which references 'pending any . . . appeal therefrom.'" (Omission in original) (quoting N.J.S.A. 18A:6-8.3). Rather, the statute mandates the disqualification of an employee "upon conviction 'at any time.'"

11

N.J.S.A. 18A:6-7.1.  In further support, defendant notes N.J.S.A. 18A:6-7.1(f) "govern[s] what happens when charges are pending, not when an appeal of a conviction is pending."  (Emphasis omitted).

Defendant further argues plaintiff's termination was legal for purposes of N.J.S.A. 18A:6-30 because it "was simply following the instructions of the CHRU."  As N.J.S.A. 18A:6-7.3 provides "[i]f the pending charge results in conviction, the employee shall not be eligible for continued employment," defendant contends it was legally required to terminate plaintiff's employment upon his conviction.  (Emphasis omitted).

Further, because plaintiff never challenged his dismissal or unpaid suspension as being without good cause before filing suit, defendant argues no good cause determination as required by N.J.S.A. 18A:6-30 has been made.  It notes the summary judgment court did not make a good cause determination in rendering its decision, and even acknowledged it did not believe either party was "suggesting that there was bad faith on the part of [defendant], or [that defendant] did anything other than what it was required to do at the time that the [m]unicipal [c]ourt convicted [plaintiff]."

Defendant further contends plaintiffs' claim for back pay is "time-barred" because they did not make written application for compensation within thirty

days after a good cause determination. Putting aside the fact no good cause determination was ever made, defendant maintains the "triggering event for the thirty-day period" was not the prosecutor's dismissal letter, but rather, the Law Division's order vacating the lewdness conviction because, at that point, plaintiff was no longer convicted.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

N.J.S.A. 18A:6-7.1(a) provides, in relevant part:

> An individual . . . shall be permanently disqualified from employment or service under this act if the individual's criminal history record check reveals a

record of conviction for any crime of the first[-] or second[-]degree; or

a. An offense as set forth in chapter 14 of Title 2C of the New Jersey Statutes . . . .

N.J.S.A. 18A:6-7.1(d) states "a conviction exists if the individual has at any time been convicted under the laws of this State or under any similar statutes of the United States or any other state for a substantially equivalent crime or other offense." Under subsection (f) of the statute, "[w]hen charges are pending for a crime or any other offense enumerated in this section, the employing board of education shall be notified that the candidate shall not be eligible for employment until the commissioner has made a determination regarding qualification or disqualification upon adjudication of the pending charges."

Under N.J.S.A. 18A:6-7.3, if an individual is charged with a qualifying crime under N.J.S.A. 18A:6-7.1, "the commissioner shall notify the employing board of education or contractor, and the board or contractor shall take appropriate action. If the pending charge results in conviction, the employee shall not be eligible for continued employment."

For public school employees illegally dismissed or suspended, N.J.S.A. 18A:6-30 provides the circumstances under which they may be entitled to compensation:

14

Any person holding office, position or employment in the public school system of the state, who shall be <u>illegally dismissed or suspended therefrom, shall be entitled to compensation for the period covered by the illegal dismissal or suspension, if such dismissal or suspension shall be finally determined to have been without good cause, upon making written application therefor with the board or body by whom he was employed, within [thirty] days after such determination.</u>

[(Emphasis added.)]

While no precedential authority addresses the requirements for compensation under this statute, by its plain language, it sets forth three criteria for back pay: (1) a public school employee must have been "illegally dismissed or suspended"; (2) their dismissal or suspension must have been finally determined to have been without good cause; and (3) the employee must have made a written application to the body by whom they were employed within thirty days of the good cause determination. See ibid.

When interpreting a statute, the "paramount goal" is to effectuate the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). "The statute's language is ordinarily the 'surest indicator' of that intent." Frugis, 177 N.J. at 280 (quoting Cornblatt, P.A. v. Barow, 153 N.J. 218, 231 (1998)). Courts should "ascribe to the statutory words their ordinary meaning and significance, and read them in

15

context with related provisions so as to give sense to the legislation as a whole." DiProspero, 183 N.J. at 492 (internal citations omitted).

"If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007) (citing DiProspero, 183 N.J. at 492). "If, however, a literal interpretation of a provision would lead to an absurd result or would be inconsistent with the statute's overall purpose, 'that interpretation should be rejected' and 'the spirit of the law should control.'" Pfannenstein v. Surrey, 475 N.J. Super. 83, 95 (App. Div. 2023) (quoting Hubbard v. Reed, 168 N.J. 387, 392-93 (2001)); see also N.J. Republican State Comm. v. Murphy, 243 N.J. 574, 613 (2020) (noting "courts must avoid interpreting . . . statutes in a way that creates absurd outcomes").

Applying our de novo standard of review and the aforementioned legal principles, we vacate the January 19, 2021 order granting plaintiffs summary judgment, vacate the September 18, 2023 civil action order of disposition and October 16, 2023 final judgment order, and remand for further proceedings. As a preliminary matter, we are convinced plaintiff was "illegally dismissed" for purposes of a back pay award under N.J.S.A. 18A:6-30.

As noted, N.J.S.A. 18A:6-7.1 requires the board dismiss a public school employee upon conviction for certain enumerated offenses. Under the statute, offenses contained in Title 14 of the Criminal Code are disqualifying, and a lewdness conviction is a qualifying offense, N.J.S.A. 2C:14-4(a). As such, upon plaintiff's conviction by the municipal court and notification from the CHRU he was disqualified from employment with the public school system, defendant was required to terminate his employment.

Although defendant was required to terminate plaintiff's employment upon his conviction and notification from the CHRU, we do not believe that means his termination cannot be declared "illegal" based on subsequent events. While the statute does not define what it means to be "illegally dismissed," N.J.S.A. 18A:6-30, "[t]he term 'illegal' is defined as 'contrary to or violating a law or rule or regulation or something else (as an established custom) having the force of law,'" Appeal of Twp. of Monroe from Determination of Loc. Fin. Bd., 289 N.J. Super. 138, 149 (App. Div. 1995) (quoting Webster's Third New International Dictionary Unabridged (1971)).

Here, it is undisputed the conviction that formed the basis of plaintiff's termination was vacated and later dismissed by the prosecutor's office. We have previously stated "[c]riminal proceedings are terminated in favor of the accused

by . . . the formal abandonment of the proceedings by the public prosecutor." Rubin v. Nowak, 248 N.J. Super. 80, 83 (App. Div. 1991) (alteration and omission in original) (quoting Restatement (Second) of Torts § 659 (Am. L. Inst. 1977))).

Once we vacated plaintiff's conviction and the prosecutor's office dismissed the lewdness charge, plaintiff no longer had any pending charges or convictions for purposes of disqualification under N.J.S.A. 18A:6-7.1. Indeed, defendant acknowledged this fact when it rehired plaintiff to his original position. Thus, to the extent plaintiff's dismissal was initially "legal" as it was mandated by N.J.S.A. 18A:6-7.1, once his conviction was vacated and the State dismissed the lewdness charge, for purposes of N.J.S.A. 18A:6-30, plaintiff's dismissal no longer had any legal support and was "contrary to" the disqualification statute. See Appeal of Twp. of Monroe, 289 N.J. Super. at 149 (quoting Webster's Third New International Dictionary Unabridged). In other words, plaintiff's dismissal, which was "legal" when done, transformed into an "illegal" termination for purposes of a back pay award under N.J.S.A. 18A:6-30 once the disqualifying conviction was vacated and the prosecutor's office dismissed the case.

A-0662-23

We simply cannot adopt defendant's position that plaintiff's dismissal was not "illegal" for purposes of a back pay award because it was statutorily required to terminate his employment upon conviction by the municipal court and notification from the CHRU. To accept defendant's interpretation would not only require that we create a legal fiction and ignore subsequent events which resulted in the dismissal of the lewdness charge, it would also require us to construe N.J.S.A. 18A:6-30 in such a way that would lead to absurd results. See Pfannenstein, 475 N.J. Super. at 95. Under defendant's interpretation of the statute, so long as a public school employee has been convicted of a disqualifying offense, they are forever barred from collecting back pay under N.J.S.A. 18A:6-30, regardless of any subsequent events, which may vindicate or exonerate the employee.

We find support for our interpretation of N.J.S.A. 18A:6-30 in other statutes concerned with protecting public school employee's compensation. For example, N.J.S.A. 18A:6-8.3 was enacted as a supplement to N.J.S.A. 18A:6-14, which governs the suspension of employees upon certification of any charge to the Commissioner of Education. See In re Grossman, 127 N.J. Super. 13, 34-35 (App. Div. 1974) (detailing the legislative history of N.J.S.A. 18A:6-8.3). N.J.S.A. 18A:6-8.3 protects a public school employee's salary pending any

19

charges before the Commissioner of Education and expressly provides those employees must receive their full salary "pending any investigation, hearing[,] . . . trial[,] or <u>any appeal therefrom</u>."  (Emphasis added).

That N.J.S.A. 18A:6-8.3 requires a public school employee be paid their full salary pending any appeal demonstrates the Legislature has taken into consideration the possibility that charges, which were initially sustained may nonetheless be overturned on appeal, and it sought to protect a public school employee's salary in such circumstances.  We discern no principled reason why the same should not apply to N.J.S.A. 18A:6-30.  Indeed, our Supreme Court has recognized "the importance of back pay awards to public sector labor relations," <u>State v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Loc. 195</u>, 169 N.J. 505, 537 (2001), and defendant has offered no credible concerns that awarding back pay to public school employees under these unique circumstances would unnecessarily burden the public fisc.

If a finding that a public school employee was "illegally dismissed" was all that is required to award back pay under N.J.S.A. 18A:6-30, we would not hesitate to affirm the court's January 19, 2021 order.  As noted, however, the statute also has two other requirements:  the dismissal or suspension must have been finally determined to have been without good cause, and the employee

must have made a written application to the body by whom they were employed within thirty days of the good cause determination. See N.J.S.A. 18A:6-30.

"Appellate review . . . 'does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered' by the trial court." Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 302 (App. Div. 2009) (quoting Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999)). Here, contrary to Rule 1:7-4, the court did not make any factual findings or legal conclusions with respect to the two remaining requirements under N.J.S.A. 18A:6-30. Further, the parties' merits briefs focus primarily on the legality of plaintiff's dismissal, with only a handful of pages dedicated to N.J.S.A. 18A:6-30's two other requirements.

Under these circumstances, we decline to exercise original jurisdiction to decide whether plaintiffs can satisfy N.J.S.A. 18A:6-30's remaining requirements. Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018) ("Although our standard of review from the grant of a motion for summary judgment is de novo . . . our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." (internal citations omitted)); see also Price v. Himeji, LLC, 214 N.J. 263, 294

(2013) (noting <u>Rule</u> 2:10-5 "allow[s an] appellate court to exercise original jurisdiction to eliminate unnecessary further litigation, but discourage[s] its use if factfinding is involved" (alterations in original) (quoting <u>State v. Santos</u>, 210 N.J. 129, 142 (2012)).

As such, we vacate the court's January 19, 2021 order and remand for it to reassess plaintiff's summary judgment application, consider the two remaining requirements for a back pay award under N.J.S.A. 18A:6-30, and state its factual findings and legal conclusions in accordance with <u>Rule</u> 1:7-4. We leave it to the court's discretion whether the parties may submit additional briefing concerning the court's ability to issue a good cause determination or if the facts and legal principles would excuse either of the remaining requirements under the facts of this case. Because we vacate the court's order granting plaintiffs summary judgment on the issue of plaintiff's entitlement to back pay under N.J.S.A. 18A:6-30, we also vacate the September 18, 2023 civil action order of disposition and October 16, 2023 final judgment order awarding plaintiffs $364,472.20 in back pay.

III.

Defendant also contends the court erred in disposing of its mitigation-based defenses "even though the issue of mitigation involved a question of fact

that was not resolved previously on summary judgment." Specifically, defendant maintains in opposing plaintiffs' summary judgment application, it "disputed . . . that [plaintiff] filed an application for retirement benefits independent of the court proceedings out of financial necessity." (Emphasis omitted). By granting plaintiffs' motions in limine, defendant contends the court prevented the parties from addressing "the circumstances surrounding [plaintiff's] retirement and other mitigation efforts, including the reasons he retired, whether he rescinded his retirement, whether he was rehired out of retirement, whether he pursued his right to appeal the CHRU's determination of his permanent disqualification, and other such facts relevant to the legal issues."

Relatedly, defendant argues the court also erred in "granting plaintiffs' motions in limine precluding any evidence or argument as to mitigation of damages." First, defendant relies upon our decision in Mullen v. Board of Education of Jefferson Township, 81 N.J. Super. 151, 153, 160 (App. Div. 1963), for the proposition "that all claims made by illegally dismissed persons under N.J.S.A. 18:5-49.1, the predecessor to N.J.S.A. 18A:6-30, are 'subject to the common law rule of mitigation of damages.'" Further, relying on Willis v. Dyer, 163 N.J. Super. 152, 165 (App. Div. 1978), defendant maintains "[u]nemployment compensation falls within the benefits that must be deducted

from any compensation award due following an illegal dismissal under the statute."

Defendant additionally contends "[p]recedent likewise dictates that retirement following the termination of employment—even in the case of an illegal termination—cuts off the right to any back pay allowed under [N.J.S.A.] 18A:6-30."  (Citing Kelty v. State, Dep't of L. & Pub. Safety, Div. of State Police, 321 N.J. Super. 84, 87 (App. Div. 1999)).  Based upon these authorities, defendant argues the court erred in relying upon Model Civil Charge 2.33 because Sporn and Craig are distinguishable from the instant matter.

We review a trial judge's decision on whether to grant or deny a motion for rehearing or reconsideration for an abuse of discretion.  JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022).  "Where the order sought to be reconsidered is interlocutory, . . . Rule 4:42-2 governs the motion."  Ibid.  Under Rule 4:42-2, "interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'"  Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021) (quoting R. 4:42-2).  We likewise review a court's grant or denial of a motion in limine for abuse of discretion.  Brenman v. Demello, 191 N.J. 18, 31 (2007) (citing Green v. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

However, we review questions of law de novo and "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Jeter v. Sam's Club, 250 N.J. 240, 251 (2022) (quoting Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018)).

A motion in limine is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 470 (App. Div. 2015) (alteration in original) (quoting Black's Law Dictionary 1109 (9th ed. 2009)). It is well-established that in limine motions that are summary judgment motions in disguise have been repeatedly condemned. "Our court rules simply do not countenance the practice of filing dispositive motions on the eve of or at the time of trial." L.C. v. M.A.J., 451 N.J. Super. 408, 411 (App. Div. 2017). "When granting a motion will result in . . . the suppression of a defendant's defenses, the motion is subject to Rule 4:46 . . . ." Cho, 443 N.J. Super. at 471. The motion must comply with all of the timelines applicable to summary judgment applications. See ibid.

"Mitigation of damages is a concept which takes into account the injured party's acts or failure to act when computing the amount of [their] recovery." Ingraham v. Trowbridge Builders, 297 N.J. Super. 72, 82 (App. Div. 1997)

(citing White v. Twp. of N. Bergen, 77 N.J. 538, 546 (1978)).  Mullen addressed whether the doctrine of mitigation was applicable to N.J.S.A. 18:5-49.1.[7]  81 N.J. Super. at 153.  The issue there was "whether a person holding a position with a local board of education is entitled to full payment of salary for the entire period of [their] illegal dismissal, without mitigation, under N.J.S.A. 18:5-49.1." Ibid.  We found the Legislature had intended that "all claims made by illegally dismissed persons under N.J.S.A. 18:5-49.1 be subject to the common law rule of mitigation of damages."  Id. at 159.

---

[7]  N.J.S.A. 18:5-49.1 was the predecessor statute to N.J.S.A. 18A:6-30.  It provided:

> Whenever any person holding office, position or employment with a local board of education or with the State Board of Education shall be illegally dismissed or suspended from his office, position or employment, and such dismissal or suspension shall upon appeal be decided to have been without good cause, the said person shall be entitled to Compensation for the period covered by the illegal dismissal or suspension; provided, that a written application therefor shall be filed with the local board of education or with the State Board of Education, as the case may be, within thirty days after such judicial determination.
>
> [Mullen, 81 N.J. Super. at 155 (emphasis omitted) (quoting N.J.S.A. 18:5-49.1).]

Model Civil Charge 2.33, which applies to statutory discrimination and retaliation employment claims, provides, in relevant part: "Although the back pay award should be reduced by any actual earnings, it should not be reduced by any unemployment benefits or other unearned income the plaintiff may have received." Model Jury Charges (Civil), 2.33, at 8.

Applying the aforementioned standards of review and legal principles, we reject defendant's arguments and affirm the court's orders. We are unpersuaded by defendant's contention the court erred in disposing of its mitigation-based defenses "even though the issue of mitigation involved a question of fact that was not resolved previously on summary judgment." Plaintiffs' motions were not filed on the eve of trial. When the court decided plaintiffs' first motion in limine on March 29, 2023, trial was scheduled to begin on May 8, 2023. With respect to plaintiffs' second motion in limine, they filed that application on April 28, 2023, and the trial date at that point was adjourned to July 3, 2023. Therefore, both motions complied with the timelines as set forth in Rule 4:46-1, which states "[a]ll motions for summary judgment shall be returnable no later than [thirty] days before the scheduled trial date."

Additionally, it was not improper for the court to decide the legal issue of whether plaintiff's retirement could be used to mitigate his damages or act as a

A-0662-23

cutoff date for his entitlement to back pay. Indeed, motions in limine may "be used effectively to clarify legal issues in advance of trial." Sculler v. Sculler, 348 N.J. Super. 374, 376 (Ch. Div. 2001) (citing Kelly v. Berlin, 300 N.J. Super. 256, 270 (App. Div. 1997)).

Finally, the record does not support defendant's claim the court accepted plaintiff's position he applied for retirement out of financial necessity in reaching its decisions. The portions of the court's decisions defendant cites are included in its discussion of the parties' arguments, not its analysis. Indeed, whether plaintiff filed for retirement out of financial necessity was irrelevant to the court's decisions.

We also conclude the court did not err in finding that plaintiff's retirement could not be used to mitigate his damages, or act as a cutoff date for any back pay to which he may be entitled. With respect to the issue of mitigation, Mullen makes clear the common law principles of mitigation apply to claims under N.J.S.A. 18A:6-30. 81 N.J. Super. at 159. The rationale for mitigation, however, does not apply to the benefits plaintiff received via his early retirement.

In Mullen, we explained to allow the appellant in that case to receive full back pay without mitigation based upon his employment would result in a

"windfall." Id. at 160.  Here, as the court noted, there would be no windfall to plaintiffs.  Neither party disputes if plaintiff receives a back pay award, he is obligated to reimburse the Division of Pensions for all retirement money received and health insurance premium money expended on his behalf during the time of his suspension and dismissal.  Indeed, if defendant was permitted to mitigate plaintiff's potential back pay award by the retirement benefits he received, the absurd result would be plaintiff paying back the retirement benefits twice.

We further find defendant's reliance on Willis unavailing.  In that case, we concluded "the unemployment compensation benefits [the] plaintiff received [were] to be deducted by the township from the back pay due him."  163 N.J. Super. at 165.  Unlike Willis, where the plaintiff was not required to repay the unemployment benefits he received, here, as noted, plaintiff will be required to reimburse the Division of Pensions should he recover a back pay award.

With respect to defendant's argument plaintiff's retirement should serve to act as a cutoff date to any potential back pay award, we are similarly unconvinced.  The sole case defendant relies upon for this argument is Kelty.  There, Kelty was suspended from the New Jersey State Police due to his involvement in a pyramid scheme.  Kelty, 321 N.J. Super. at 87-88.  After he

was found guilty, Kelty was required to forfeit his office under N.J.S.A. 2C:51-2. Id. at 88. Before his forfeiture took place, however, Kelty submitted an application for retirement. Ibid. Eventually, we issued an opinion reversing his conviction. Ibid.

Kelty subsequently filed a complaint seeking, among other things, back pay. Id. at 88-89. We concluded he was entitled to back pay "from the date of his court-ordered forfeiture . . . to the date of his retirement." Id. at 93-94. Essential to our conclusion was the fact that although the Legislature "ha[d] enacted statutes which allow various public officials to receive compensation or emoluments of office even when those officials have provided no service, [the Legislature] ha[d] not so provided for members of the New Jersey State Police." Id. at 91. Therefore, the basis for our conclusion was not the fact of Kelty's retirement, but the "common law rule . . . that where no public service is rendered, no salary may be paid, unless the Legislature has specifically provided otherwise."[8] Id. at 93 (citing De Marco v. Bd. of Chosen Freeholders of Bergen Cnty., 21 N.J. 136, 143-44 (1956)).

---

[8] We further note, our Supreme Court has since abrogated the common law rule of "no work, no pay." Int'l Fed'n of Prof'l & Tech. Eng'rs, Loc. 195, 169 N.J. at 540.

Again, defendant seeks to create a legal fiction by fixing the back pay analysis at a moment in time. In other words, defendant argues any back pay award which plaintiff may be entitled to should be limited by virtue of his early retirement; ignoring the undisputed fact plaintiff is no longer retired. Defendant's argument also overlooks that plaintiff rescinded his retirement, defendant rehired him to his previous position, and plaintiff is obligated to reimburse the Division of Pensions for all money expended on his behalf. All these facts effectively render plaintiff's retirement a nullity with respect to this issue, and we discern no reason why it should serve to limit any potential back pay award.

Here, the Legislature has explicitly provided that a public school employee who has been illegally dismissed or suspended "shall be entitled to compensation for the period covered by the illegal dismissal or suspension." N.J.S.A. 18A:6-30. As such, should plaintiffs be entitled to back pay under N.J.S.A. 18A:6-30, plaintiff's retirement does not terminate his entitlement to back pay. Additionally, because the court correctly found plaintiff's retirement could not be used to mitigate his damages or terminate his entitlement to back pay, it correctly denied defendant's subsequent motions for reconsideration.

In sum, we affirm the trial court's orders dated March 29, May 30, July 21, and August 25, 2023. We vacate the January 19, 2021 order granting plaintiffs summary judgment, vacate the September 18, 2023 civil action order of disposition and the October 16, 2023 final judgment order, and remand for further proceedings. To the extent we have not addressed any of defendant's remaining arguments, it is because we have concluded they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division